SilvermanAcampora LLP
Counsel to Kenneth P. Silverman, Esq.,
Interim Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman, Esq.
Rachael E. Dioguardi, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
AT CENTRAL ISLIP
------------------------------------------------------------X

In re:

AGAPE WORLD, INC.,

Debtor.

------------------------------------------------------------X

Chapter 7 - Involuntary
Case No. 09-70660 (DTE)

### TRUSTEE'S APPLICATION FOR ENTRY OF AN ORDER APPROVING RETENTION OF THE GARDEN CITY GROUP, INC. AS NOTICING AND CLAIMS AGENT

Kenneth P. Silverman, Esq. as the interim chapter 7 trustee (the "Trustee") of the estate of Agape World, Inc. (the "Debtor"), by his counsel SilvermanAcampora LLP, submits this application (the "Application") seeking the entry of an order pursuant to §105 of title 11 of the United States Code (the "Bankruptcy Code"), §156(c) of title 28 of the United States Code, and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Trustee's retention of The Garden City Group, Inc., as notice and claims agent in this case under the terms and conditions provided for in the Bankruptcy Administration Agreement, dated March __, 2009 (the "GCG Agreement"), by and between the Trustee and GCG, which is annexed hereto as **Exhibit A**, sets forth and represents as follows:

#### JURISDICTION

1.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and 1334. Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Code §105, 28 U.S.C. §156(c) and Bankruptcy Rule 2002.

## BACKGROUND

2. On February 5, 2009, an involuntary chapter 7 petition was filed by four petitioning creditors (the "Petitioning Creditors") pursuant to 11 U.S.C. §303(b), against the Debtor in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

3. On February 9, 2009, the Petitioning Creditors filed a motion to appoint an interim chapter 7 trustee under 11 U.S.C. §303(g).

4. On February 12, 2009, this Court granted the Petitioning Creditors' motion and entered an order directing the United States Trustee's Office (the "UST") to immediately appoint an interim chapter 7 trustee in the Debtor's case.

5. By notice of appointment, dated February 12, 2009, the UST appointed the Trustee as interim trustee in the Debtor's case.

6. On March 4, 2009, this Court issued an Order for relief in the Debtor's chapter 7 case.

## THE TRUSTEE'S APPLICATION

7. This Application is made pursuant to Bankruptcy Code §105(a), 28 U.S.C. §156(c) and Bankruptcy Rule 2002, authorizing The Garden City Group. Inc. ("GCG") to act as the official claims agent to the Clerk of the Bankruptcy Court (the "Clerk") in order to assume full responsibility for distribution of notices and proofs of claim, and maintenance, processing and docketing of proofs of claim filed in the Debtor's chapter 7 case.

8. The Trustee anticipates notice will be in excess of Five Thousand Five Hundred (5,500) entities. In view of the number of anticipated claimants, the Trustee submits that the appointment of an outside claims agent is both necessary and in the best interests of the creditors of the Debtor's estate.

RED/D279676v/F056601

9.      The Trustee requires assistance with (a) noticing the numerous creditors and parties in interest, (b) maintaining an information based website setting forth pertinent case information relating to noticing and claims, and (c) the preparation of certain reports as requested by the Trustee and his counsel in this case. The Trustee submits that because this case involves thousands of creditors and parties in interest, it is appropriate for the Trustee to retain a noticing and claims agent.

10.     For approximately 17 years, GCG has been engaged in the business of claims processing and noticing, primarily in large, complex and nationwide class action settlements. GCG began as a business unit of KPMG, where it handled a number of chapter 11 reorganization administrations. In or around 1994, the business split from KPMG and formed the company now know as GCG.

11.     GCG is well qualified to provide the Trustee with experienced claims and noticing services in connection with the Debtor's chapter 7 case. The large chapter 11 and chapter 7 cases in which GCG is or was retained as notice and claims agent, include: *In re OTC International, Ltd.,* case no. 08-11181 (AJG) (Bankr. S.D.N.Y. 2008), *In re Alper Holdings USA, Inc.,* case no. 07-12148 (BRL) (Bankr. S.D.N.Y. 2007), *In re Our Lady of Mercy Medical Center,* case no. 07-10609 (REG) (Bankr. S.D.N.Y. 2007), *In re The New York Racing Association Inc.,* case no. 06-12618 (JMP) (Bankr. S.D.N.Y. 2006), *In re The Akadine Press, Inc.,* case no. 06-22002 (ASH) (Bankr. S.D.N.Y. 2006), *In re Calpine Corporation* (in the capacity as Communications Agent for the Official Committee of Unsecured Creditors), case no. 05-60200 (BRL) (Bankr. S.D.N.Y. 2005), *In re Saltire Industrial, Inc.,* case no. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004), *In re Sure Fit, Inc.,* case no. 04-11495 (BRL) (Bankr. S.D.N.Y. 2004), *In re General Media, Inc.,* case no. 03-15078 (SMB) (Bankr. S.D.N.Y. 2003), *In re MGNH, Inc.,* case no. 04-37133 (CGM) (Bankr. S.D.N.Y. 2004), *In re Dice Inc.,* case no. 03-10877 (BRL) (Bankr. S.D.N.Y. 2003), *In re Interbank Funding Corp.,* case no. 02-41590 (BRL) (Bankr. S.D.N.Y. 2002), *In re Galey & Lord, Inc.,* case no. 02-40445 (ALG) (Bankr. S.D.N.Y. 2002), *In re PSINet*

RED/D279676v/F056601

*Consulting Solutions Holdings, Inc.*, case no. 01-14916 (REG) (Bankr. S.D.N.Y. 2001), *In re NTL Inc.*, case no. 02-41316 (ALG) (Bankr. S.D.N.Y. 2002) and *In re Regus Business Centre Corp.*, case no. 03-20026 (ASH) (Bankr. S.D.N.Y. 2003), which were filed in the Southern District of New York; *In re Zurich Depository Corp.*, case no. 07-71352 (JBR) (Bankr. E.D.N.Y. 2007), *In re Copperfield Investment, LLC*, case no. 07-71327 (JBR) (Bankr. E.D.N.Y. 2007), *In re The Brunswick Hospital Center, Inc.*, case no. 07-40290 (CEC) (Bankr. E.D.N.Y. 2007), *In re Victory Memorial Hospital, Inc.* (in the capacity as Communications Agent for the Official Committee of Unsecured Creditors), case no. 06-44387 (CEC) (Bankr. E.D.N.Y. 2006), *In re Photocircuits Corporation*, case no. 05-89022 (SB) (Bankr. E.D.N.Y. 2005), *In re MetroTec Communications, Inc.*, case no. 05-20953 (DEM) (Bankr. E.D.N.Y. 2005), *In re Allou Distributors Inc.*, case no. 03-82321 (ESS) (Bankr. E.D.N.Y. 2003) and *In re CyberRebate.com, Inc.*, case no. 01-16534 (CEC) (Bankr. E.D.N.Y. 2001), which were filed in the Eastern District of New York.

12.     In addition to GCG's general reputation in the bankruptcy field and specialized capabilities which formed the basis for its retention in numerous chapter 11 cases and chapter 7 cases, the Trustee and the creditors of the Debtor's estate will benefit from GCG's experience as a notice agent and claims agent from the efficient and cost-effective methods that GCG has developed.

13.     The Trustee has concluded that GCG is equipped to handle the noticing and claims processing in this case, and GCG has agreed to follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk and the Judicial Conference.

14.     GCG, at the request of the Trustee has agreed to provide the following services as the notice agent and claims agent:

>    a.  Prepare and serve required notices in the Debtor's chapter 7 case, including
>
>    >    i.   Notice of the Debtor's Section 341(a) First Meeting of Creditors;
>    >
>    >    ii.  Notice of the claims bar date;
>    >
>    >    iii. Notice(s) of objections to claims; and

RED/D279676v/F056601

      iv. Other miscellaneous notices to any entities, as the Trustee or the Court may deem necessary or appropriate for the administration of the Debtor's case.

b. After the mailing of a particular notice, file with the Clerk's Office a certificate or affidavit of service that includes a copy of the notice served, an alphabetical list of the persons to whom the notice was mailed and the date and manner of mailing;

c. Maintain copies of all proofs of claim;

d. Maintain official claims registers, including, *inter alia*, the following information for each proof of claim;

      i. the name and address of the claimant and any agency thereof, if the proof of claim was filed by an agent;

      ii. the date received;

      iii. the claim number assigned; and

      iv. the asserted amount and classification of the claim.

e. Implement the necessary security measures to ensure the completeness and integrity of the claims register;

f. Transmit to the Clerk's Office a copy of the claims register on a weekly basis, unless requested by the Clerk's Office on a more or less frequent basis;

g. Maintain an up-to-date mailing list for all entities that have filed a proof of claim, which list shall be available upon request of a party in interest or the Clerk's Office;

h. Provide access to the public for examination of copies of the proofs of claim without charge during regular business hours;

i. Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e);

j. Comply with applicable federal, state, municipal and local statutes, ordinances, rules, regulations, orders and other requirements; and

k. Promptly comply with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

15.    In connection with its retention as notice and claims agent, GCG represents, *inter alia*, that:

a. GCG will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the notice and claims agent in the Debtor's chapter 7 case;

5

b. By accepting employment in the Debtor's chapter 7 case, GCG waives any rights to receive compensation from the United States government;

c. In its capacity as the notice and claims agent in the Debtor's chapter 7 case, GCG will not be an agent of the United State and will not act on behalf of the United Sates; and

d. GCG will not employ any past or present employees of the Debtor in connection with its work as the notice and claims agent in the Debtor's chapter 7 case.

16. Subject to this Court's approval, the Trustee seeks authorization to compensate GCG for professional services rendered in connection with the Debtor's chapter 7 case pursuant to the GCG Agreement. Payments are to be based upon the submission of a monthly billing statement, which includes a detailed listing of such services, expenses and supplies (the "Monthly Billing Statement"). For those services for which GCG charges an hourly rate, as set forth in Schedule "A" to the Agreement, GCG will bill its time in increments in one-tenth (1/10) of an hour. The Trustee and GCG propose, and the GCG Agreement provides, that GCG will be paid in the full amount of the Monthly Billing Statement, within thirty (30) days of the Trustee's receipt of each Monthly Billing Statement, without further application to this Court, unless there is an unresolved dispute between the Trustee and GCG.

17. To the best of the Trustee's knowledge, GCG has no connection with the Debtor's creditors or any other party in interest or their respective attorneys that would impair GCG's ability to serve as the noticing and claims agent in the Debtor's chapter 7 case as set forth in the affidavit of Jeffrey S. Stein, Vice President of GCG (the "Affidavit"), which is annexed hereto as **Exhibit B**. Additionally, GCG represents no interest adverse to the Debtor or the Debtor's estate, or any other interested person in the matters with respect to which GCG is being retained by the Trustee, except as set forth in the annexed Affidavit.

18. Furthermore, GCG is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) and GCG:

a. is not a creditor, equity security holder, or insider;

RED/D279676v/F056601

b.  is not and was not, within two (2) years before the date of the filing of the petition, a director, officer, or employee of the Debtor; and

c.  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

## CONCLUSION

19.    No prior application has been submitted to this or any other Court for the relief sought herein.

20.    A copy of the proposed Order authorizing the Trustee's retention of GCG as noticing and claims agent in the Debtor's chapter 7 case is annexed hereto as **Exhibit C**.

**WHEREFORE**, the Trustee respectfully requests that the Court (a) enter an order, substantially in the form annexed hereto as **Exhibit C**, granting the relief requested herein and (b) grant such further relief as the Court deems just and proper.

Dated: Jericho, New York
March 9, 2009

SILVERMANACAMPORA LLP
Counsel to Kenneth P. Silverman,
Interim Chapter 7 Trustee

By: _____
Ronald J. Friedman
A Member of the Firm
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
(516) 479-6300

RED/D279676v/F056601

# Exhibit A

# BANKRUPTCY ADMINISTRATION AGREEMENT

This Bankruptcy Administration Agreement, dated as of March 6, 2009, is between The Garden City Group, Inc., a Delaware corporation (the "Company"), and Kenneth P. Silverman, Chapter 7 Trustee of the estate of Agape World, Inc., Debtor (the "Client").

The Client desires to retain the Company to perform certain noticing, claims processing and other administration services for the Client in the chapter 7 case filed in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), and the Company desires to be so retained, in accordance with the terms and conditions of this Agreement.

In consideration of the mutual covenants herein contained, the parties hereby agree as follows:

1.  <u>Services</u>.  The Company agrees to provide the services necessary to perform the tasks specified in the pricing schedule that has been supplied to the Client.  Such services are hereinafter referred to as "Services."  The Client agrees and understands that none of the Services constitute legal advice.

2.  <u>Payment for Services; Expenses</u>.

    2.1  <u>Compensation.</u>  As full compensation for the Services to be provided by the Company, the Client agrees to pay the Company its fees as outlined in the pricing schedule that has been supplied to the Client (subject to Bankruptcy Court approval in the event of an unresolved dispute).  Premium rates may apply for Services performed after normal business hours and during weekends and holidays.  Billing rates may be adjusted from time to time by the Company in its reasonable discretion, although billing rates generally are changed on an annual basis.

    2.2  <u>Expenses</u>.  In addition to the compensation set forth in Section 2.1, the Client shall reimburse the Company for all out-of-pocket expenses reasonably incurred by the Company in connection with the performance of the Services (subject to Bankruptcy Court determination in the event of an unresolved dispute).  The out-of-pocket expenses will be billed on the expense (non-fee) portion of the Company's invoice to the Client and may include, but are not limited to, postage, banking fees, brokerage fees, costs of messenger and delivery service, travel, filing fees, staff overtime meal expenses and other similar expenses.  In some cases, the Company may receive a rebate at the end of a year from a vendor.

    2.3  <u>Billing and Payment</u>.  Except as provided in Section 2.2, the Company shall bill the Client for its fees and expenses on a monthly basis, and the Client shall pay the Company within thirty (30) days of its receipt of each such bill in the ordinary course of business (subject to Bankruptcy Court approval in the event of an unresolved dispute).  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses such as postage must be paid at least three (3) business days in advance of those fees and expenses being incurred.

3.  <u>Term and Termination</u>.

    3.1  <u>Term</u>.  The term of this Agreement shall commence on the date hereof and shall continue until performance in full of the Services, unless earlier terminated as set forth herein.

    3.2  <u>Termination</u>.

        (a)  In the event of any material breach of this Agreement by either party hereto, either party may apply to the Bankruptcy Court for an order allowing termination of the

Agreement. Grounds for termination include: (i) failure to cure a material breach within thirty (30) days after receipt of the notice by the non-breaching party or (ii) in the case of any breach which requires more than thirty (30) days to effect a cure, failure to commence and continue in good faith efforts to cure such breach, provided that such cure shall be effected no later than ninety (90) days after receipt of such notice of such breach. Waiver of any such default or material breach by either party hereto shall not be construed as limiting any right of termination for a subsequent default or material breach.

        (b)     The Company shall be entitled to an administrative claim for all fees and expenses outstanding at the time of termination (subject to Bankruptcy Court approval in the event of an unresolved dispute).

4.     Independent Contractor. It is understood and agreed that the Company, through itself or any of its agents, shall perform the Services as an independent contractor. Neither the Company nor any of its employees shall be deemed to be an employee of the Client. Neither the Company nor any of its employees shall be entitled to any benefits provided by the Client to its employees, and the Client will make no deductions from any of the payments due to the Company hereunder for state or federal tax purposes. The Company agrees that the Company shall be responsible for any and all taxes and other payments due on payments received hereunder by the Company from the Client. Nothing in this Agreement requires the Client to use the Company for any future work relating to the Services, and, in the event the Client decides to use another party for such future work, the Company agrees to cooperate fully with the Client to ensure a smooth transition to the new party.

5.     Accuracy of Client Supplied Information. The Client is responsible for the accuracy of all programs, data and other information it submits to the Company (including all information for schedule and statement preparation) and for the output of such information. The Company may undertake to place that data and information into certain systems and programs, including in connection with the generation of Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"). The Company does not verify information provided by the Client and, with respect to Schedules and Statements preparation, all decisions are at the sole discretion and direction of the Client. All Schedules and Statements filed on behalf of, or by, the Client are reviewed and ultimately approved by the Client, and the Company bears no responsibility for the accuracy or contents therein.

6.     Confidential Information.

        6.1     Confidentiality. In connection with this Agreement, each of the Client and the Company (as the case may be, the "Disclosing Party") may disclose to the Company or the Client (as the case may be, the "Receiving Party") certain information (a) that is marked or otherwise identified in writing as confidential or proprietary information of the Disclosing Party ("Confidential Information") prior to or upon receipt by the Receiving Party; or (b) which the Receiving Party reasonably should recognize from the circumstances surrounding the disclosure to be Confidential Information. The Receiving Party (x) shall hold all Confidential Information in confidence and will use such information only for the purposes of fulfilling the Receiving Party's obligations hereunder and for no other purpose, and (y) shall not disclose, provide, disseminate or otherwise make available any Confidential Information to any third party other than for the purposes of fulfilling the Receiving Party's obligations hereunder, in either case without the express prior written permission of the Disclosing Party. Notwithstanding the foregoing, the Receiving Party may disclose Confidential Information pursuant to a validly issued subpoena or order of a court of competent jurisdiction.

        6.2     Protection of Intellectual Property. The Client acknowledges that the Company's intellectual property, including, without limitation, the Company's inventions (whether or not patentable), processes, trade secrets and know how are of ultimate importance to the Company. Accordingly, the Client agrees to use its best efforts to protect such intellectual property, and shall not, either during the

term of this Agreement or subsequent to its termination, utilize, reveal or disclose any of such intellectual property. The Client understands that the software programs and other materials furnished by the Company pursuant to this Agreement and/or developed during the course of this Agreement by the Company are the sole property of the Company. The term "program" shall include, without limitation, data processing programs, check printing programs, specifications, applications, routines, sub-routines, procedural manuals, and documentation. The Client further agrees that any ideas, concepts, know-how or techniques relating to the claims management software used or developed by the Company during the course of this Agreement shall be the exclusive property of the Company.

6.3     Scope.  The foregoing obligations in Sections 6.1 and 6.2 shall not apply to (a) information that is or becomes generally known or available by publication, commercial use or otherwise through no fault of the Receiving Party; (b) information that is known by the Receiving Party prior to the time of disclosure by the Disclosing Party to the Receiving Party; (c) information that is obtained from a third party who, to the Receiving Party's knowledge, has the right to make such disclosure without restriction; (d) any disclosure required by applicable law; or (e) information that is released for publication by the Disclosing Party in writing. The obligations set forth under Sections 6.1 and 6.2 shall survive the termination of this Agreement.

7.     Limitation on Damages.   The Company shall be without liability to the Client with respect to anything done or omitted to be done, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct. In no event shall liability to the Client for any claims, losses, costs, fines, penalties or damages, including court costs and reasonable attorneys' fees (collectively, "Losses"), whether direct or indirect, arising out of or in connection with or related to this Agreement, exceed the total amount billed or billable to the Client for the portion of the particular work which gave rise to the Losses. Under no circumstances will the Company be liable to the Client for any special, consequential or incidental damages incurred by the Client relating to this Agreement or the performance of Services hereunder, regardless of whether the Client's claim is for breach of warranty, contract, tort (including negligence), strict liability or otherwise.

8.     Indemnification.  The Client hereby indemnifies and holds harmless the Company and its directors, officers, employees, affiliates and agents against any Losses incurred by the Company arising out of or in connection with or related to (a) any gross negligence or willful misconduct by the Client, its employees, agents or representatives, or any misrepresentations made by such persons to third parties in connection with the Company's acts or omissions in connection with its rendition of the Services; (b) any breach of this Agreement by the Client; or (c) any erroneous instructions or information provided to the Company by the Client for use in providing the Services.

9.     Jurisdiction.  This Agreement is subject to the approval of the Bankruptcy Court, and such Court shall retain jurisdiction over all matters regarding this Agreement.

10.     Force Majeure.   Whenever performance by the Company of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock-out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reason of any other matter beyond the Company's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

11.     Notice.  Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery

to such courier, as follows: if to the Company, to The Garden City Group, Inc., 105 Maxess Road, Melville, New York 11747-3836, Attention: David Isaac, President; and if to the Client, to Silverman Acampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attention: Kenneth P. Silverman.

12.     <u>Governing Law</u>. This contract will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

13.     <u>Severability.</u> All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

14.     <u>Assignment</u>. This Agreement and the rights and obligations of the Company and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

15.     <u>General.</u> This Agreement supersedes and replaces any existing agreement entered into by the Company and the Client relating generally to the same subject matter, and may be modified only in a writing signed by the Company and the Client. The paragraph headings in this Agreement are included only for convenience, do not in any manner modify or limit any of the provisions of this Agreement and may not be used in the interpretation of this Agreement. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"). If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

KENNETH P. SILVERMAN
AS CHAPTER 7 TRUSTEE OF
AGAPE WORLD, INC.             THE GARDEN CITY GROUP, INC.

By: _____     By: _____
Name: _Ronald S. Friedman, As Attorney_    Name: _Jeffrey S. Stein_
Title: _Counsel to Chapter 7 Trustee_     Title: _Vice President_

# Exhibit B

|  |  |  |
|---|---|---|
| In re | ) |  |
|  | ) | Case No. 09-70660 (DTE) |
| **AGAPE WORLD INC.,** | ) |  |
|  | ) | Chapter 7 |
| Debtor. | ) |  |
|  | ) |  |

**AFFIDAVIT OF JEFFREY S. STEIN IN SUPPORT OF THE APPLICATION FOR
ORDER UNDER 28 U.S.C. § 156(c) AUTHORIZING THE RETENTION OF THE
GARDEN CITY GROUP, INC. AS NOTICING AND CLAIMS AGENT AND
<u>APPROVING A RELATED AGREEMENT</u>**

Jeffrey S. Stein, being duly sworn, deposes and says:

1.      I am a Vice President of The Garden City Group, Inc. ("GCG") and I am authorized to make and submit this affidavit on behalf of GCG.  This affidavit is submitted in support of the Application of Kenneth P. Silverman, Chapter 7 Trustee (the "Chapter 7 Trustee") of Agape World Inc. (the "Debtor"), for authorization to retain GCG as official noticing and claims agent in the Chapter 7 case ("Claims Agent), pursuant to 28 U.S.C. § 156(c) (the "Application") and to approve a related agreement.  The statements contained herein are based upon personal knowledge.

2.      GCG is one of the country's leading Chapter 11 and Chapter 7 administrators with expertise in noticing, claims processing, and distribution.  GCG is well qualified to provide the Chapter 7 Trustee with experienced noticing and claims processing services in connection with this case.  Among the Chapter 11 and Chapter 7 cases in which GCG is or was retained, as noticing and claims agent are: <u>In re Zurich Depository Corp.</u>, case no.

07-71352 (JBR), In re Copperfield Investment, LLC, case no. 07-71327 (JBR), In re The Brunswick Hospital Center, Inc., case no. 07-40290 (CEC), In re Photocircuits Corporation, case no. 05-89022 (SB), In re MetroTec Communications, Inc., et al., case no. 05-20953 (DEM), In re Allou Distributors Inc., et al., case no.03-82321 (ESS) and In re CyberRebate.com, Inc., case no. 01-16534 (CEC), which were filed in the Eastern District of New York; In re Fortunoff Holdings, LLC, case no. 09-10497 (RDD); In re Star Tribune Holdings Corporation, case no. 09-10244 (RDD), In re Lenox Sales, Inc., case no. 08-14679 (ALG), In re IHP Corp., case no. 08-11181 (AJG), In re Alper Holdings USA, Inc., case no. 07-12148 (BRL), In re Our Lady of Mercy Medical Center, case no. 07-10609 (REG), In re The New York Racing Association Inc., case no. 06-12618 (JMP), In re Saltire Industrial, Inc., case no. 04-15389 (BRL), In re Sure Fit, Inc., case no. 04-11495 (BRL) and In re General Media, Inc., case no. 03-15078 (SMB), which were filed in the Southern District of New York; In re Forward Foods LLC, case no. 09-10545 (KJC), In re Nailite International, Inc., case no. 09-10526 (MFW), In re Foothills Texas, Inc., case no. 09-10452 (CSS), In re Comfort Co., Inc., case no. 08-12305 (MFW), In re DG Liquidation Corp., case no. 08-10601 (CSS), In re KCMVNO, Inc., case no. 08-10600 (BLS), In re Supplements LT Inc., case no. 08-10446 (KJC), In re ProRhythm, Inc., case no. 07-11861 (KJC), In re S-Tran Holdings, Inc., et al., case no. 05-11391 (RB), In re Flintkote Company, case no. 04-11300 (JKF), In re Factory 2-U Stores, Inc., case no. 04-10111 (PJW), In re Magnatrax Corporation, case no. 03-11402 (PJW), In re Federal-Mogul Global, Inc., case no. 01-10578 (AMW) and In re ACandS, Inc., case no. 02-12687 (RJN), which were filed in the District of Delaware; In re Commercial Mortgage & Finance Co., case no. 08-73242 (MB, In re Printers Row, LLC, case no. 08-17301 (ERW), and In re Gateway Home Care Inc., et al., case no. 03-17457 (JPC), which were filed in the Northern District of Illinois; In re TCI 2 Holdings LLC, case no. 09-13654

2

(JHW), In re Foxtons, Inc., et al., case no. 07-24496 (MBK), In re NJ Affordable Homes Corp.,

case no. 05-60442 (DHS), In re Omne Staffing Inc., et al., case no. 04-22316 (RG), In re

NorVergence, Inc., case no. 04-32079 (RG), In re Muralo Company, Inc., case no. 03-26723

(MS) and In re AremisSoft, case no. 02-32621 (RG), which were filed in the District of New

Jersey; In re O'Sullivan Industries, Inc., et al., case no. 05-83049 (CRM) and In re Galey & Lord,

Inc., et al., case no. 04-43098 (MGC), which were filed in the Northern District of Georgia; In re

United Producers, Inc., case no. 05-55272 (CMC), which was filed in the Southern District of

Ohio; In re Boyds Collection, Ltd., et al., case no. 05-43793 (DWK), which was filed in the

District of Maryland; In re Romacorp, Inc., case no. 05-86818 (BJH), which was filed in the

Northern District of Texas; In re Mercury Companies, Inc., case no. 08-23125 (MER), which was

filed in the District of Colorado; and In re Hawaiian Airlines, Inc., case no. 03-00817 (RJF),

which was filed in the District of Hawaii.

   3.  The Chapter 7 Trustee selected GCG to serve as the Claims Agent for the

Debtor's estate, as set forth in more detail in the Application filed contemporaneously herewith.

To the best of my knowledge, neither GCG, nor any of its professional personnel, have any

relationship with the Debtor that would impair GCG's ability to serve as Claims Agent. GCG

does have relationships with some of the Debtor's creditors, but they are in matters completely

unrelated to this Chapter 7 case, either as vendors or in cases where GCG serves in a neutral

capacity as a class action settlement claims administrator. GCG's assistance in the cases where

GCG acts as a class action settlement claims administrator has been primarily related to the

design and dissemination of legal notice and other administrative functions in class actions.

GCG has working relationships with certain of the professionals retained by the Chapter 7

Trustee and the Debtor and other parties herein but such relationships are completely unrelated to

3

this Chapter 7 case. In addition, GCG personnel may have relationships with some of the Debtor's creditors; however, such relationships are of a personal financial nature and completely unrelated to this Chapter 7 case. GCG has and will continue to represent clients in matters unrelated to this Chapter 7 case and has had and will continue to have relationships in the ordinary course of its business with certain vendors and professionals in connection with matters unrelated to this case.

     4.     Since 1999, GCG has been a wholly owned subsidiary of Crawford & Company, an insurance risk-adjusting firm. I am advised that Crawford & Company has no material relationship with the Debtor and while it may have rendered services to certain creditors, or have a vendor relationship with some creditors, such relationships were (or are) in no way connected to GCG's representation of the Chapter 7 Trustee in this Chapter 7 case.

     5.     GCG is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, in that GCG and its professional personnel:

          (a)     are not creditors, equity security holders or insiders of the Debtor;

          (b)     are not and were not, within two years before the date of the entry of the order for relief in the Debtor's Chapter 7 case, directors, officers or employees of the Debtor; and

          (c)     do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

     6.     GCG has not been retained to assist any entity or person other than the Chapter 7 Trustee on matters relating to, or in connection with, this Chapter 7 case. If GCG's proposed retention is approved by this Court, GCG will not accept any engagement or perform

4

any service for any entity or person other than the Chapter 7 Trustee in this Chapter 7 case. GCG may, however, provide professional services to entities or persons that may be creditors or parties in interest in this Chapter 7 case, which services do not relate to, or have any direct connection with this Chapter 7 case, the Chapter 7 Trustee, or the Debtor.

7.    GCG represents, among other things, that:

(a)    It will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims Agent;

(b)    By accepting employment in this bankruptcy case, GCG waives any right to receive compensation from the United States government;

(c)    In its capacity as Claims Agent, GCG will not be an agent of the United States and will not act on behalf of the United States; and

(d)    GCG will not employ any past or present employees of the Debtor in connection with its work as Claims Agent.

8.    Subject to the Court's approval, the Chapter 7 Trustee has agreed to compensate GCG for professional services rendered in connection with this Chapter 7 case pursuant to the retention agreement by and between the Chapter 7 Trustee and GCG, a true and correct copy of which is attached as Exhibit A. Payments are to be based upon the submission to the Chapter 7 Trustee by GCG of a billing statement, which includes a detailed listing of services and expenses, at the end of each calendar month.

9.     GCG will comply with all requests of the Clerk of the Court and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

*Jeffrey S. Stein*

Sworn and subscribed to
before me this 6th day
of March, 2009

_____
Notary Public

NANCY FORMICA
Notary Public, State of New York
No. 01FO4933172
Qualified in Queens County
My commission expires August 8, 2010

6

# Exhibit C

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
AT CENTRAL ISLIP
----------------------------------------------------------X
In re:

Chapter 7 - Involuntary
AGAPE WORLD, INC.                                    Case No. 09-70660 (DTE)

                              Debtor.
----------------------------------------------------------X

### ORDER AUTHORIZING TRUSTEE'S RETENTION OF THE GARDEN CITY GROUP, INC. AS NOTICING AND CLAIMS AGENT FOR THE DEBTOR'S ESTATE

Upon the application dated March __, 2009 (the "Application") of Kenneth P. Silverman, Esq., as the interim chapter 7 trustee (the "Trustee") of the estate of Agape World, Inc. (the "Debtor"), by his counsel SilvermanAcampora LLP, seeking the entry of an order pursuant to section 105 of title 11, United States Code 28 U.S.C. §156(c), and Rule 2002 of the Federal Rules of Bankruptcy Procedure authorizing the Trustee's retention of The Garden City Group, Inc. ("GCG") as noticing and claims agent for the Debtor's estate; the Court having reviewed the Application and the affidavit of Jeffrey S. Stein, Vice President of GCG, and the Court having determined that the legal and factual bases set forth in the Application and Stein Affidavit establish just cause for the requested relief, it is

**ORDERED**, that the Application is granted; and it is further

**ORDERED**, that the Trustee is authorized to retain GCG as the noticing and claims agent in the Debtor's chapter 7 case pursuant to the terms of the Application and the Agreement with GCG annexed as Exhibit "A" to the Application; and it is further

**ORDERED,** that the Trustee is authorized, empowered, and directed to do such things, execute such documents, and expend such funds as are necessary to implement the terms and the conditions of this Order.

Dated: Central Islip, New York
      March \_\_, 2009

 

_____
Dorothy T. Eisenberg
United States Bankruptcy Judge

Dated: Central Islip, New York
      March \_\_, 2009

**NO OBJECTION:**

_____
Office of the United States Trustee

RED/D279813v/F056601